PEERLESS RUBBER MFG. CO. v. NICHOL et al.

(Circuit Court, S. D. Ohio, W. D. January 9, 1911.)

No. 6,514.

TRADE-MARKS AND TRADE-NAMES (§ 98*)—INFRINGEMENT—GOOD FAITH.

Where defendants purchased certain spurious "Rainbow" packing from a stranger who was recommended to them, plaintiff having for years manufactured and sold a superior grade of packing under that name, but, on defendants' attention being called to the infringement, they disclaimed any guilty knowledge, and offered to desist from the use and sale thereof, and disclosed their books, showing that they had only sold therefrom packing amounting to $44.07, complainant was entitled to an injunction restraining further sales, and to an order for the destruction of the spurious packing, but was not entitled to damages.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 112; Dec. Dig. § 98.*]

In Equity. Bill by the Peerless Rubber Manufacturing Company against Thomas J. Nichol and another, doing business as Thomas J. Nichol & Co. Decree for complainant.

Joseph Wilby, Ernest Hopkinson, and Edward W. Vaill, for complainant.

Fulton & Woost, for defendants.

HOLLISTER, District Judge. The complainant is a manufacturer of rubber goods, including packing, in the city of New York, and in 1890 adopted and used as a trade mark and name the word "Rainbow," which it has used down to the time of filing its bill, and from the superior qualities and merits of its goods under that name has acquired a reputation and sold its goods, so named, in large quantities throughout the United States and foreign countries.

It charges the respondents with being engaged in manufacturing and selling rubber goods in the city of Cincinnati, and with having with fraudulent purpose sold inferior packing under the name "Rainbow," and threatening to continue the same.

The bill alleges that the goods sold by respondents are calculated to deceive, and do mislead, the public into the belief that the respondents' goods so sold are made from the secret composition of matter known under the trade-mark "Rainbow," manufactured by the complainant, to the injury of the reputation, business, and profits of the complainant, and charges the respondents with infringement.

The bill prays for a discovery of the names, addresses, etc., of all persons who have manufactured for the respondents goods marked "Rainbow," but not made and sold by the complainant. An accounting of profits, by reason of the fraudulent acts of the respondents, is prayed for, and an injunction to restrain the use of the word "Rainbow" on packing, etc., not made by the complainant.

The respondents deny all fraud and fraudulent intent, or unfair competition, or that they threatened to continue to use any packing which is an infringement of complainant's packing and trade-mark, and deny

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

injury to complainant's profits and reputation, and deny that they sold and continued at the date of the bill to sell, packing under the designation "Rainbow," and deny that any of their acts are contrary to equity and good conscience.

Respondents show in their answer that they are in the business of manufacturing and selling steam-heating pipes, hot-water pipes, gas pipes, and plumber's supplies in Cincinnati, and that it is a part of their business in manufacturing their products to use a material known as "red packing": that in December, 1908, a man unknown to them brought to their place of business a sample of red packing which he represented to have been purchased by him from a railway company at a sale of various articles for unpaid freight charges. They required references of him, which being satisfactory, they purchased four rolls of red packing for $106.60 in the regular course of business. Afterwards, upon unwrapping the rolls, it appeared they were marked "Rainbow," and that it resembled the red packing they had been using in their business, the purposes of which it answered. They deny being or ever having been in the business of selling packing, but say they used it in their business from time to time as it was required; that they never offered any packing for sale as "Rainbow" packing or otherwise, or made any effort to sell the same, but from time to time did sell to customers and others who came to their factory and asked for red packing, and used some of it in repair work; that they sold some 15 items of packing to as many different customers, aggregating the sum of $44.07, including a sale made May 4, 1909, to a representative of the complainant, at which time they first learned that the packing was not genuine "Rainbow," but an imitation; and that thereupon they ceased selling and using the packing complained of. They say that all of their acts were done in good faith, in the regular course of business, without any fraud or concealment, or any intent to injure the complainant or any other person.

The good faith of the respondents is amply sustained by the testimony. They were not in the business of selling packing. They used it incidentally in packing steam joints and water joints, where the pressure was light and where an inferior packing answered the purpose, and even leather packing would have sufficed. They occasionally sold a small piece of the packing to a neighbor or some one coming from the river, who desired to use it on a power boat.

They purchased the packing from a stranger for 13 cents a pound, when "Rainbow" was worth about 48 cents. The first price asked was 18 cents. Before purchasing they inquired of George Hesterburg, president of the Queen City Brass Works, known to them for 30 years, to whom the stranger referred them; they not being willing to purchase at so low a figure from a stranger. Mr. Hesterburg told them of a purchase by him of new valves from the same man, who had referred them to Chicago, where inquiries made concerning him were satisfactory. Immediately upon learning from a representative of complainant, May 4, 1909, that the packing so purchased was an imitation of complainant's "Rainbow," they ceased selling or using the same, and have the offending article stored in their cellar. On that

day the respondents told the representative of complainant that they would not make any further sales of the packing, and they did not. Nevertheless the complainant brought this suit in equity, and has caused great expense to be incurred in taking testimony. Shortly after the suit was brought the respondents used every reasonable effort to locate the stranger from whom they had purchased the spurious packing, but were unsuccessful.

Under the circumstances the court is unable to entertain even a suspicion of fraudulent conduct on the part of the respondents.

April 7, 1910, the respondents filed an offer of submission, reciting the facts and offering to submit to a decree of injunction perpetually enjoining them from selling the packing in their possession as "P⌐⁚⋅ bow" packing, and offering to pay the costs of entering and recording a decree of injunction against them, asking that the facts be set out in the decree for the protection of their reputation, and to pay such costs as the court might award, but submit that they should not be required to pay any deposition or docket fee, or any portion of the complainant's costs.

The court is unable to escape the conviction that, so far as the respondents are concerned, there was no necessity for bringing this suit; but it may be that a justification for it lies in the desire of complainant to warn those who may wish to manufacture and sell a spurious article that complainant proposes to prosecute and punish them.

Technically the respondents infringed complainant's trade-mark and should be enjoined; but the decree should be so framed as to show their good faith. No damages are asked for, and the amount of profits is so insignificant that ascertainment of it by a master would cost much more than the profits would amount to. In fact, no accounting is necessary, for the respondents have willingly shown their books and the number of sales made by them. The complainant is entitled to have the spurious packing destroyed.

Assuming that technically the complainant had the right to bring the suit, the docket fee and costs of filing the complainant's pleadings and the cost of defendants' depositions, as well as the cost of the decree, will be assessed against the respondents. The other costs will be assessed against the complainant.